# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**KEITH ALEXANDER,**                                    :

          **Plaintiff**                                    :

      **v.**                                    : **CIVIL ACTION NO. 3:14-0678**

**GERALD ROZUM, et al.,**                                    :          **(Judge Mannion)**

        **Defendants**                                    :

## MEMORANDUM

## I.      Background

Plaintiff, Keith Alexander, an inmate confined in the State Correctional Institution, Coal Township, ("SCI-Coal Township"), Pennsylvania, filed the above captioned action pursuant to 42 U.S.C. §1983. (Doc. No. 1, complaint). The named defendants are the following SCI-Coal Township employees: Nurse Supervisor Yakiel, Superintendent Mooney, Superintendent Secretary Leonard, Physician Assistant Davis, Former Health Care Administrator McCarthy, and Acting Health Care Administrator Confer. Id. Plaintiff also names the following employees of the State Correctional Institution, Somerset, ("SCI-Somerset"), Pennsylvania: Superintendent Rozum, Deputy Superintendent Gibson, Chief Health Care Administrator Thomas, and Dr. Dascani. Id. Finally, Plaintiff names the following Department of Corrections Employees: Directory of Bureau of Health

Care Services Ellers, and Attorney Fulginiti. Id.

Plaintiff's complaint begins with his 2004 biopsy, conducted at the State Correctional Institution, Cresson, Pennsylvania, with a diagnosis of "Lichenoid Chronic Dermatitis", continues with the June 13, 2011 change in diagnosis, by the medical staff at SCI-Somerset, from "Lichenoid to Seborrheic Keratosis[1]", and concludes with his November 11, 2012 transfer to SCI-Coal Township, where the alleged misdiagnosis of his condition continues to this day. (Doc. No. 1, complaint).

Attached to Plaintiff's complaint, as exhibits, are a series of grievances, grievance responses and documentation which demonstrate the factual background of Plaintiff's complaint as follows:

---

1.   Plaintiff attaches to his complaint the medical definition of Seborrheic Keratosis which defines the condition as follows:

> Seborrheic Keratosis are benign, wart like lesions of various sizes and colors, ranging from light to tan to black. They are usually located on the face, shoulders, chest, and back and are the most common skin tumors seen in middle-age and elderly people. They may be cosmetically unacceptable to the patient. A black Keratosis may be erroneously diagnosed as malignant melanoma. Treatment is removal of the tissue by excision, electrodesiccation (destruction of the skin lesions by monopolar high frequency electric current) and curettage, or application of carbon dioxide or liquid nitrogen. However, there is no harm in allowing these growths to remain because there is no medical significance to their presence.

(Doc. No. 1 at 9, Exhibit A, Management of Patients with Dermatologic Problems).

On July 6, 2011, while an inmate at SCI-Somerset, Plaintiff filed Grievance No. 371735, which was denied by Defendant, Health Care Administrator Thomas on July 22, 2011, as follows:

> Inmate Alexander, GP-1965, is grieving the Medical Department because he feels his condition is being ignored, and he is seeking monetary damages. The grievant was seen at a surgical clinic, and had a biopsy of a skin lesion. The results showed a harmless skin condition that does not require medical intervention. It is not an infection, and is not harmful to his well being. This grievance and the request for monetary damages are denied.

(Doc. No. 1 at 22, Initial Review Response).

On July 20, 2011, Plaintiff filed Grievance No. 373710, which was denied by Defendant, Deputy Superintendent Gibson on September 12, 2011, with the following response:

> The grievant is appealing the response to grievance #373710.
>
> Upon further investigation of this matter with the CHCA, it was learned that the grievant was seen by Dr. Dascani on September 9, 2011 regarding the results of the skin biopsy. The doctor shared written information on this condition with him. There is no treatment indicated for this condition, but he was given some medication to alleviate the itching. This is the same issue as in grievance #371735.
>
> Therefore, grievance is denied.

(Doc. No. 1 at 21, Initial Review Response).

On August 23, 2011, Plaintiff wrote to Defendant, Bureau of Health Care

3

Services Director Richard S. Ellers, regarding his medical care, and received the

following response:

> This is in response to your recent letter dated August 23, 2011, regarding your medical care at SCI-Somerset. You arrived on September 20, 2011, from SCI-Greene. You were seen on May 5, 2011, by the CRNP who ordered in the surgical clinic a biopsy of the skin lesion and ordered Mycology II cream twice a day for 14 days. On June 9, 2011, the doctor obtained a punch biopsy of the skin lesion. The result on June 13, 2011, was Seborrheic Keratosis, pigmented and inflamed. You were seen by the doctor on September 9, 2011, for an itchy rash on your legs for one year and were still itching after being treated with antifungal. You were ordered Selenium Sulfide topical suspension for two weeks and methylprednisone in 4mg. dose packs for two weeks. You were seen by the SCI-Somerset doctor on September 23, 2011, for follow up stating "my skin is better, but still at night, it itches." You were ordered 50 mg. Vistaril tab one by mouth every bedtime for 60 days until November 23, 2011. Your medical record has no documentation of MRSA. In accordance with the procedures listed in the Inmate Handbook, you may direct written questions via DC-135A, Inmate to Staff Request form, to an appropriate member of the medical staff of your institution. If you are not satisfied with their response, the grievance process is available to you.

> The Pennsylvania Department of Corrections provides medical services to inmates that are consistent with community standards. The DOC contracts with vendors who employ credentialed, licensed physicians and physician assistants who are responsible for the assessment, treatment and follow-up of all inmate medical conditions. Access to outside specialists and appropriate medical facilities is also provided through the vendors.

> The medical staff at SCI-Somerset will continue to address

> your health care concerns and assess and appropriately treat
> every medical condition identified. Please direct your future
> questions and concerns to the Medical Director, and Denise
> Thomas, Corrections Health Care Administrator.

(Doc. No. 1 at 11, Nov. 23, 2011 Letter).

On April 27, 2012, Defendant, Attorney Fulginiti, responded to Plaintiff's

April 20, 2012 letter concerning his medical treatment, with the following:

> I am in receipt of your letter dated April 20, 2012, in which you
> claim that you are not currently being treated for your chronic
> health issues. Specifically, you allege that you suffer from
> itching, bleeding sores on your legs, but the medical
> department of SCI-Somerset has, to this point, refused to treat
> you for this condition.

> I have contacted the medical department of SCI-Somerset and
> have been advised that you have previously been evaluated for
> this condition and it was found that you had no need for
> treatment. Additionally, it was advised that your last sick call
> request about this issue occurred on September 23, 2011. I
> encourage you to avail yourself of sick all opportunities to
> address any medical issues you may be experiencing.

> I am hereby closing this request. Any further issues should be
> directed to your institutional medical department.

(Doc. No. 1 at 12, April 27, 2012 Letter).

On October 19, 2013, while an inmate at SCI-Coal Township, Plaintiff

filed Grievance No. 481869, against the medical departments of SCI-Somerset

and SCI-Coal Township "on the grounds of being misdiagnosed of a disease and

being given treatment for a disease that does not exist." (Doc. No. 1 at 10, Official

Inmate Grievance).

On November 12, 2013, Grievance No. 481869 was denied as follows:

Your skin condition is a long-standing condition. Your record indicates multiple biopsies dated 2004, 2011, and another in September, 2013. Each time, you were diagnosed and treated appropriately.

The grievance is denied.

(Doc. No. 1 at 15, Initial Review Response).

On appeal, Grievance No. 481869 was upheld by Defendant, Superintendent Mooney finding the following:

I have read your appeal and reviewed all available information pertaining to your concerns. Let me begin by addressing your issue regarding the Superintendent's Secretary. While I admit there were errors that occurred during the process of your grievance appeal,[2] I assure you that none of these were intentional or meant with any ill will. That being said in reviewing the initial grievance response provided by the institutional Medical staff, I feel that it was accurate and concise. Ms. Dressler, RN Supervisor clearly states the condition you suffer from has been long standing and has been monitored by our staff to include multiple biopsies dating back to 2004. Each time a biopsy result was returned it was addressed and appropriately handled by our staff.

_____

2.  Apparently, Plaintiff's appeal was forwarded to the Superintendent's Office, where it was received on November 19, 2013, but not acted upon. Plaintiff's letter to Deputy Superintendent Klopotoski brought this fact to light and the appeal was remanded to Superintendent Mooney for a decision. (See Doc. No. 1 at 18, January 3, 2014 Letter).

> Based on the above information, your grievance appeal is denied.

(Doc. No. 1 at 20, Facility Manager's Appeal Response).

On April 8, 2014, Plaintiff filed the instant action in which he states that "the defendant at SCI-Somerset, the Bureau of Health Care Services, Fulginiti, Esquire, and the SCI-Coal Township defendants failed to take reasonable measures to abate the substantial risk of harm of Plaintiff's serious medical needs" and "as a result of their deliberate indifference the Plaintiff was the victim of a misdiagnosis that caused his physical conditions to deteriorate causing him pain and suffering." Id. He claims that the Defendants have "obstructed the process and continue to cause the Plaintiff harm", amounting to "deliberate indifference in violation of Plaintiff's rights under cruel and unusual punishment and Due Process Clause of the Eighth and Fourteenth Amendments" Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of an order "to have the lesions removed from Plaintiff's legs." Id.

Plaintiff paid the full filing fee. Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA") obligates the Court to engage in a screening process. See Vieux v. Smith, 2007 WL 1650579(M.D. Pa.)(if prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. §1915A, not 28 U.S.C. §1915(e)(2)(B)).

7

Section 1915A provides:

**(a) Screening.** The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief against defendant who is immune from such relief.

28 U.S.C. §1915A. The complaint will now be reviewed pursuant to the screening provisions of the Act. For the reasons set forth below, the instant complaint will be dismissed for failure to state a claim.

**I.      Discussion**

**A.      Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d

8

224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

## B.  Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

10

mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d

11

236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint, and his supporting documentation, clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff has been continually assessed, monitored and treated since his first biopsy in 2004.

At best, Plaintiff's complaint demonstrates his disagreement with medical personnel. Though he may believe that the lesions on his legs should have been

12

removed, in contradiction to the medical information he was supplied with and the Medical staffs' judgment, his disagreement with the course of action that the medical department at two institutions took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir.1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[3] This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not

---

3. Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Plaintiff does not suggest that both institutions' medical staff were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir.2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

Moreover, to the extent that Plaintiff believes that he has been misdiagnosed, mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67. Once again, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir.2002). Since it is clear from Plaintiff's complaint, and supporting documentation, that Plaintiff received adequate medical treatment throughout his incarceration at both SCI-Somerset and SCI-Coal Township, and merely disagrees with the treatment he received during this time, the Court finds that amendment on these claims would be futile.

C.     **Claims against Defendants Rozum, Gibson, Thomas, Ellers, Mooney, Leonard, McCarthy and Confer**

Plaintiff fails to state a claim against Defendants Rozum, Gibson, Thomas, Ellers, Mooney, Leonard, McCarthy and Confer because the complaint reveals that they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles.

Local government units and supervisors typically are not liable under §1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d

15

Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A §1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an official-capacity action, ... a governmental entity is liable under §1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to these Defendants, a review of the complaint confirms that other then being listed as Defendants there are no specific assertions that any of these Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. Rather, the claims asserted against these Defendants are premised either upon their respective supervisory positions

within the DOC or their handling of Plaintiff's subsequent institutional grievances and appeals.

However, dissatisfaction with the response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir.2005) (involvement in post-incident grievance process not a basis for §1983 liability); Pryor-El v. Kelly, 892 F.Supp. 261, 275 (D.D.C.1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec.19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Thus, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F.Supp. 922, 931–32 (M.D. Pa.1992), aff'd, 980 F.2d 722 (3d Cir.1992). Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly, Defendants Rozum, Gibson, Thomas, Ellers, Mooney, Leonard, McCarthy and Confer Wetzel, Bickell and Showalter are entitled to entry of dismissal. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:   July 25, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0678-01.wpd